Case 1:21-cr-00177-JKB Document 60 Filed 10/23/23 Page 1 of 16

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

4:21 pm, Oct 23 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

Adam K. Ake
Assistant United States Attorney
Adam.Ake@usdoj.gov
PEB 09.3.23

Mailing Address:
6500 Cherrywood Lane, Ste 200
Greenbelt, MD 20707

Office Location:
6406 Ivy Lane, Ste 800
Greenbelt, MD 20707

DIRECT: 301-344-4340
MAIN: 301-344-4433
FAX: 410-962-3091

September 6, 2023

Katherine T. Newberger, Esq.
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

Re:   <u>United States v. Charles F. Wheat, III</u>, Criminal No. JKB-21-177

Dear Ms. Newberger:

      This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Charles F. Wheat, III (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by Friday, September 15, 2023, at 5:00 p.m., it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

      1.    The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges the Defendant with Production of Child Pornography in violation of Title 18, United States Code, Section 2251(a). The Defendant admits that the Defendant is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

      2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the date specified in Counts One of the Indictment, in the District of Maryland, and elsewhere, the Defendant:

      a.    Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

      b.    For the purpose of producing a visual depiction of such conduct; and

c. The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

## **Penalties**

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2251(a) | 15 years | 30 years | Lifetime | $250,000 | $100 + $5,000 |

    a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664, and 18 U.S.C. § 2259(b)(2)(b) (mandatory restitution of no less than $3,000.00 for victims of child exploitation).

    d. Special Assessments: The Court must order the Defendant to pay a special assessment pursuant to 18 U.S.C. § 3013 and may order additional special assessments for certain convictions pursuant to 18 U.S.C. §§ 3014 and 2259A.

    e. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    f. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    g. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant

Rev. August 2018

authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Sex Offender Registration

4. The Defendant understands and agrees that as a consequence of Defendant's conviction for the crimes to which he is pleading guilty, the Defendant will be required to register as a sex offender in the place where he resides, where he is an employee, and where Defendant is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

5. The Defendant understands that by entering into this agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had persisted in a plea of not guilty, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in the Defendant's defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the

3

charges against the Defendant. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights the Defendant is giving up and about the facts of the Defendant's case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find the Defendant guilty.

      h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if the Defendant is not a citizen of the United States, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This stipulation specifically establishes the commission of additional offenses than those in Count One. Pursuant to § 1B1.2(c), those additional offenses shall be treated as if the defendant had been convicted of additional counts charging those offenses.

### Group One – Female Victim #1 (Count One)

      a.     The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

   b. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36)

   c. Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the defendant was a relative of the minor and the minor was in the custody, care, or supervisory control of the defendant. (Subtotal: 38)

  Group Two – Female Victim #2 Relevant Conduct

   d. The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

   e. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. (Subtotal: 36)

   f. Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the custody, care, or supervisory control of the defendant. (Subtotal: 38).

  Group Three – Female Victim #3 Relevant Conduct

   g. The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

   h. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34)

   i. Pursuant to U.S.S.G. § 2G2.1(b)(3), there is a two (2) level increase because the Defendant knowingly engaged in distribution. (Subtotal 36)

   j. Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the custody, care, or supervisory control of the defendant. (Subtotal: 38).

  Group Four – Female Victim #4 Relevant Conduct

   k. The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

   l. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34)

   m. Pursuant to U.S.S.G. § 2G2.1(b)(3), there is a two (2) level increase because the Defendant knowingly engaged in distribution. (Subtotal 36)

   n. Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the custody, care, or supervisory control of the defendant. (Subtotal: 38).

  Group Five – Female Victim #5 Relevant Conduct:

Rev. August 2018

  o. The base offense level for production of child pornography is 32 pursuant to U.S.S.G. § 2G2.1(a).

  p. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a two (2) level increase because the victim in this case was under the age of 16 at the time of the offense. (Subtotal: 34)

  q. Pursuant to U.S.S.G. § 2G2.1(b)(3), there is a two (2) level increase because the Defendant knowingly engaged in distribution. (Subtotal 36)

  r. Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two (2) level increase because the minor was in the custody, care, or supervisory control of the defendant. (Subtotal: 38).

Group 6 - Filipino Child Pornography Relevant Conduct:

  s. The base offense level for receipt of child pornography is 22 pursuant to U.S.S.G. § 2G2.2(a)(2).

  t. Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the material involved a prepubescent minor who had not attained the age of 12 years. (Subtotal: 24)

  u. Pursuant to U.S.S.G. § 2G2.2(b)(6), there is a two (2) level increase because the offense involved the use of a computer or interactive computer service for the receipt of the material. (Subtotal: 26)

  v. Pursuant to U.S.S.G. § 2G2.2(b)(7), there is a five (5) level increase because the offense involved at least 600 images. (Subtotal: 31)

Grouping:

  8. Pursuant to U.S.S.G. § 3D1.4, the group with the highest offense level is 38 (Group Six) and there are 4 additional groups equally serious or from 1 to 4 levels less serious and one group 9 or more levels less serious. Thus, pursuant to U.S.S.G. §§ 3D1.4, 4 levels are added to Group Six. (Subtotal: 42).

  9. Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. (Subtotal: 47).

  10. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about Defendant's involvement in the offense; (d) is untruthful with the Court, this Office, or the

Rev. August 2018

United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw Defendant's plea of guilty. Thus, the final anticipated offense level is 44.

11. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

12. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

13. At the time of sentencing, this Office and the Defendant will jointly recommend that the Court impose a sentence of 180 months in this case. The parties reserve the right to advocate for a reasonable period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

14. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant, and will recommend to the Court that the sentence of imprisonment it imposes in this case run concurrent with the sentence imposed in the related case of *State of Maryland v. Charles F. Wheat III*, C12CR21000122. The Defendant may request the Court adjust its sentence pursuant to U.S.S.G. § 5G1.3(b) to account for time the defendant already has served on that case, which the government acknowledges is relevant conduct to the instant case.

## Waiver of Appeal

15. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including

the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

      i.      The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

      ii.      This Office reserves the right to appeal any sentence below a statutory minimum.

      c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Restitution

16.      The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Restitution in Cases Involving the Sexual Exploitation of Children

17.      Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, and 18 U.S.C. § 2259, the Defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the defendant agrees to pay restitution to any of Defendant's minor victims, for the entire scope of Defendant's criminal conduct, including but not limited to all matters included as relevant conduct. The Defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. §

3664(d)(5), the Defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

### Additional Special Assessments in Sex Crimes Cases

18.     Pursuant to 18 U.S.C. § 3014 (the Justice for Victims of Trafficking Act "JVTA"), since the offense of conviction is under Chapter 110 (relating to sexual exploitation and other abuse of children), the Defendant must also pay an additional special assessment of $5,000, unless the Defendant is indigent.

19.     Assessments in Child Pornography Cases: Pursuant to 18 U.S.C. § 2259A (the Amy, Vicky, and Andy Child Pornography Victim Assistance Act "AVAA"), in addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess- (1) not more than $17,000 on any person convicted of an offense under section 2252(a)(4) or 2252A(a)(5); (2) not more than $35,000 on any person convicted of any other offense for trafficking in child pornography; and (3) not more than $50,000 on any person convicted of a child pornography production offense.

### Forfeiture

20.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

21.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

   a. Samsung Galaxy S20+ 5G cell phone, model: SM-G986U, s/n: R5CN3060XWK (Asset ID: 21-ICE-000788);

   b. Alienware Aurora R5 desktop computer, service tag: 6R2BND2 containing a Seagate 1TB hard drive, s/n: Z9A7HC0B (Asset ID: 21-ICE-000789);

   c. SanDisk Extreme Plus 32GB microSD card, s/n: 9267DPLKG1YD (Asset ID: 21-ICE-000790); and

   d. SanDisk Ultra 64GB microSD card, s/n: 0014AXDLAC2Y (Asset ID: 21-ICE-000791).

22.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. This Office agrees to seek the Attorney General's approval to apply forfeited assets to the Defendant's Restitution Order.

23.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

24.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

25.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

26.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

27.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up

Rev. August 2018

to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

28. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

By: _____
Adam K. Ake
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9/22/23
Date

Charles F. Wheat, III

I am Charles F. Wheat, III's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

9/22/23
Date

Katherine T. Newberger, Esq.

11

Rev. August 2018

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Between April and November 2020, Charles F. Wheat, III ("Wheat"), age 38, produced sexually explicit images of five minor girls while they used a restroom in his Bel Air, Maryland home, of which he was the sole regular occupant. Additionally, during that time, Wheat sent images that he produced of the minors with correspondents in the Philippines, to whom Wheat provided payment and who sent Wheat images and videos of minors being sexually exploited.

Count One (Female Victim #1):

Prior to April 7, 2020, in his guest bathroom, Wheat installed a digital camera that was hidden from plain view and directed towards the toilet, intending to capture video depicting the lascivious display of visitors' genitals. On July 5, 2020, Female Victim #1, who was born in 2014, was in Wheat's custody, care, or supervisory control. After Female Victim #1 disrobed to use the toilet, Wheat, using footage captured from the hidden camera, created "AryNew.mp4", a 0:41 minute video showing Female Victim #1 pulling her pants down and lifting up her shirt before sitting on the toilet. Her legs are spread, exposing her genitals when she first sits down. On July 6, 2020, Wheat created a still image file from the video footage titled Screenshot_20200706-122256_VideoPlayer.jpg, which showed Female Victim #1 sitting on the toilet with her legs spread and her genitals exposed.

Relevant Conduct (Female Victims 2 through 5, Counts Two-Five):

(Count Two) On July 5, 2020, Wheat produced a video titled MOT_0005.avi from captured hidden camera footage. That video file is approximately one minute and 16 seconds long and depicts Female Victim #2, born in 2012, sitting on his toilet. Female Victim 2 stands up in front of the toilet with her legs slightly spread exposing her genitals as she wipes before pulling her pants back up. Like Female Victim #1, Female Victim #2 was in Wheat's custody, care, or supervisory control when the images were captured.

(Count Three) On November 16, 2020, Wheat produced a video titled 20201116_013945.mp4. That video file was approximately 53 seconds long and depicted Female Victim #3 sitting on his toilet with her legs spread and her genitals exposed. Female Victim #3 was born in 2008 and was in Wheat's custody, care, or supervisory control when the images were captured.

1

(Count Four) On April 7, 2020, Wheat produced a file titled Yanna14.avi, a 1:59 minute video that depicts Female Victim #4 sitting on his toilet playing with her phone. During the video, Female Victim #4 lifts up her right leg and spreads her legs to wipe exposing her genitals. Later, the video shows her standing up with her pants around her knees exposing her genitals to the camera. Female Victim #4 was born in 2007.

(Count Five) On September 6, 2020, Wheat produced a file titled Lexi.mp4, 45 seconds long video showing Female Victim #5 sitting on Wheat's toilet. Female Victim #5's pants are pulled down to her knees. Her genitals are slightly exposed when she stands up to pull up her underwear and pants. Female Victim #5 was born in 2007.

Relevant Conduct (Receipt and Distribution of Child Pornography):

In addition to the acts above, Wheat maintained contact with several Filipino sex traffickers who produced and provided Wheat with images of minors engaged in sexual acts. For instance, on September 4, 2020, Wheat engaged in a Facebook chat with a "Bautista Lhiza" in which Lhiza and Wheat exchanged pictures of a girl engaged in sexual acts alone and with another young girl. During that exchange, Lhiza sent Wheat a photo of a pubescent female's genitals and the following conversations ensued:

| From: | To: | Content: |
| --- | --- | --- |
| Lhisz | Wheat | She's really getting a lady now |
| Wheat | Lhiza | Mmmm nice babe |
| Lhiza | Wheat | Just got finish period few days ago |

Wheat then sent a photo of a pubescent female's genitals to Lhiza:

| From: | To: | Content: |
| --- | --- | --- |
| Wheat | Lhiza | Aww that's good babeee<br>What do you think? |
| Lhiza | Wheat | Hhhmmm lots of hair like her mom hehe |
| Wheat | Lhiza | She have more than Ramona I think now huh hihihi Ramona trim hers |
| Lhiza | Wheat | Oohhh yeaahh maybe because she getting teenager |
| Wheat | Lhiza | She already good and mature huh hihihi |
| Lhiza | Wheat | She's turning 14 next year<br>Yeeaahhhh we teach them to be a matured and be responsible |

Wheat then sent another photo of a prepubescent female's genitals. The photo showed a hand touching the genitals just above the opening. After Wheat sent this photo he engaged in the following conversation:

| From: | To: | Content: |
|---|---|---|
| Wheat | Lhiza | Do you like it babeeee? |
| Lhiza | Wheat | Hehe you keep her photo ahhh hehehe |
| Wheat | Lhiza | Shhh just for us remember |
| Lhiza | Wheat | Looks good aaahh |
| Wheat | Lhiza | It's so very beautiful and nice |
| Lhiza | Wheat | Just be carefull to save it om<br>Ok |
| Wheat | Lhiza | Yes only for me and I show you only babeee<br>That's why I said I want you to join with her soon when you see her |
| Lhiza | Wheat | Much better to delete and ask for a new one I think to be sure<br>Did you save it on your fone?<br>Yes babe it's for us only<br>Picky finger<br>Yeaaahhh I hope soon when everything's ok to us |
| Wheat | Lhiza | Yes babe I saved her picture before |
| Lhiza | Wheat | Hhmmm ok bane<br>Babe |
| Wheat | Lhiza | I will deletethem if you want it |
| Lhiza | Wheat | Hehehe no its up to you babe<br>If you want to keep it it's fine…just keep it to us ahhhh hehe |
| Wheat | Lhiza | Yes us only babe |

Prior to engaging in the communication above, Lhiza requested of Wheat "just promisd to me that after all the doings we had vidoes delete it after ok sl we dont have trouble." Wheat responded, "I trust you too babeeee I wish you had accept and interested in younger too huh hihihi," and "you have my word babe thata why im very careful sith this kind of doings and talkings."

Additionally, Wheat distributed hidden camera videos of two of the minor Female Victims listed above to Songco and videos of another minor Female Victim listed above to another female located in the Philippines.

Further, during the forensic analysis of Wheat's devices, investigators found several videos that depicted Wheat's girlfriend Songco engaged in oral and vaginal sex with a prepubescent boy. Some of the videos also depict a prepubescent girl whom Songco encourages to engage in sexually

3

explicit conduct with the prepubescent boy. Two of the videos depicting Songco engaged in sexually explicit conduct with the prepubescent boy are described as follows:

**video-a6b770bcebc46e75d6a22487459caf2eV.mp4** – a 1-minute video-depicting an adult female squatting above a prepubescent boy that is lying on his back with his penis exposed. The adult female is using the fingers on her left hand to place the prepubescent boy's penis into her vagina. The adult female then uses her fingers to fondle her vaginal area while sitting on the prepubescent boy's penis.

**video-7306a54cd23ee76b7ef867e409cdcb99-V.mp4** – a video file approximately 2 minutes and 37 long depicting an adult female performing oral sex on a prepubescent boy. The prepubescent male is wearing a blue t-shirt.

On September 9, 2020, Wheat asks Songco in Facebook Messenger "Did you delete our chats again too?" and Songco replies, "No babe ..I gonna reset my phone."

From on or about March 8, 2014 to on or about January 28, 2021, Wheat sent over $60,000 to individuals in the Philippines through several different money remitters.

Facilitating Property for Forfeiture

On February 4, 2021, law enforcement conducted a warranted search of Wheat's Bel Air home. During the execution of the search warrant, agents seized the following equipment belonging to Wheat:

a. Samsung Galaxy S20+ 5G cell phone, model: SM-G986U, s/n: R5CN3060XWK

b. Alienware Aurora R5 desktop computer, service tag: 6R2BND2 containing a Seagate 1TB hard drive, s/n: Z9A7HC0B

c. SanDisk Extreme Plus 32GB microSD card, s/n: 9267DPLKG1YD

d. SanDisk Ultra 64GB microSD card, s/n: 0014AXDLAC2Y

The devices were forensically examined and found to contain over 600 images of child sexual exploitation material. The digital devices were all manufactured out of the state of Maryland. The visual child pornography found in Wheat's possession was transported in or affecting interstate or foreign commerce and were produced using materials that had been transported in or affecting interstate or foreign commerce.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case

*Charles F. Wheat III*
Charles F. Wheat III

I am Mr. Wheat's attorney. I have carefully reviewed the statement of facts with him.

*Katherine T. Newberger*
Katherine T. Newberger, Esq.
Counsel for Charles F. Wheat, III

5